Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 1 of 21 PageID #: 6

NEW YORK STATE SUPREME COURT
KINGS COUNTY

JOSEPH AMODEO,

                                    Plaintiff,

-against-

DIOCESE OF BROOKLYN, CAMP ALVERNIA, and
FRANCISCAN BROTHERS OF BROOKLYN,

                                    Defendants.

Index No.: _____/__

Date Filed:

**SUMMONS**

Plaintiff designates Kings
County as the place of trial.

The basis of venue is one
defendant's residence.

**Child Victims Act Proceeding
22 NYCRR 202.72**

TO THE ABOVE-NAMED DEFENDANTS:

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive
of the day of service (or within 30 days after the service is complete if this summons is not
personally delivered to you within the State of New York); and in case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: June 1, 2020

                        Respectfully Yours,

                        MARSH LAW FIRM PLLC

                        By _____
                            James R. Marsh
                            Jennifer Freeman
                            Robert Lewis
                            jamesmarsh@marsh.law
                            jenniferfreeman@marsh.law
                            robertlewis@marsh.law
                            31 Hudson Yards, 11th Floor
                            New York, NY 10001-2170
                            Phone: 212-372-3030

Case 1:23-cv-05037-NCM-JRC   Document 1-1   Filed 07/03/23   Page 2 of 21 PageID #: 7

**PFAU COCHRAN VERTETIS AMALA PLLC**

By _____

Vincent T. Nappo
Anelga Doumanian
vnappo@pcvalaw.com
adoumanian@pcvalaw.com
31 Hudson Yards, 11th Floor
New York, NY 10001-2170

**Attorneys for Plaintiff**

2

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 3 of 21 PageID #: 8

NEW YORK STATE SUPREME COURT
KINGS COUNTY

JOSEPH AMODEO,                                        Index No.:

                               Plaintiff,            **COMPLAINT**

-against-

DIOCESE OF BROOKLYN, CAMP ALVERNIA, and              **Child Victims Act Proceeding**
FRANCISCAN BROTHERS OF BROOKLYN,                     **22 NYCRR 202.72**

                               Defendants.

Plaintiff Joseph Amodeo, by and through his attorneys, the Marsh Law Firm PLLC and

Pfau Cochran Vertetis Amala PLLC, respectfully alleges for his complaint the following:

## I.      INTRODUCTION

1.      The Diocese of Brooklyn (the "Diocese") knew for decades that its priests, clergy,

religious brothers, religious sisters, school administrators, teachers, employees, and volunteers

were using their positions within the Diocese to groom and to sexually abuse children. Despite that

knowledge, the Diocese failed to take reasonable steps to protect children from being sexually

abused and actively concealed the abuse. In February of 2019, following decades of denial and

cover-up, the Diocese of Brooklyn released a list of over 100 priests accused of sexually abusing

children. Based on the Diocese's wrongful conduct, a reasonable person could and would conclude

that it knowingly and recklessly disregarded the abuse of children and chose to protect its

reputation and wealth over those who deserved protection. The result is not surprising: for decades

hundreds, if not thousands, of children were sexually abused by Catholic clergy and others who

served the Diocese. The plaintiff in this lawsuit is one of the children who were sexually abused

because of the Diocese's wrongful conduct.

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 4 of 21 PageID #: 9

## II.    PROCEEDING IN ACCORDANCE WITH CPLR 214-G AND 22 NYCRR 202.72

2.    This complaint is filed pursuant to the Child Victims Act (CVA) 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440), CPLR 214-G, and 22 NVCRR 202.72. The CVA opened a historic one-year one-time window for victims and survivors of childhood sexual abuse in the State of New York to pursue lapsed claims. Prior to the passage of the CVA, plaintiff's claims were time-barred the day plaintiff turned 22 years old. The enactment of the CVA allows plaintiff, for the first time in plaintiff's life, to pursue restorative justice in New York State.

### III.    PARTIES

3.    Plaintiff Joseph Amodeo is an adult male who currently resides on Staten Island, New York.

4.    While he was a minor, plaintiff Joseph Amodeo was a victim of one or more criminal sex acts in the State of New York, including sexual acts that would constitute a sexual offense as defined by the Child Victims Act.

5.    The Diocese is currently a not-for-profit religious corporation organized under New York law with its principal office in Brooklyn, New York.

6.    At all relevant times the Diocese conducted business as the Diocese of Brooklyn.

7.    At all relevant times the Diocese employed and/or relied on priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and others who served various Catholic institutions and families, including plaintiff Joseph Amodeo and his family.

8.    Plaintiff Joseph Amodeo was abused by a religious brother of the Diocese and the Franciscan Brothers of Brooklyn ("the Franciscan Brother" or "the Franciscan Brother who abused Joseph"). The Franciscan Brother who abused Joseph was a religious brother and employee of the

2

FILED: KINGS COUNTY CLERK 07/28/2020 04:17 PM

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 5 of 21 PageID #: 10

Diocese who served Catholic families on behalf of the Diocese, including plaintiff Joseph Amodeo and his family.

9.     During the time the Franciscan Brother who abused Joseph served the Diocese, he used his positions as a religious brother and employee of the Diocese to groom and to sexually abuse plaintiff Joseph Amodeo.

10.     To the extent that the Diocese was a different entity, corporation, or organization during the period of time during which the Franciscan Brother who abused Joseph used his positions as a religious brother and employee to sexually abuse plaintiff Joseph Amodeo, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as the Diocese of Brooklyn.

11.     To the extent the Diocese is a successor to a different entity, corporation, or organization which existed during the period of time during which the Franciscan Brother who abused Joseph used his positions as a religious brother and employee to sexually abuse plaintiff Joseph Amodeo, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as the Diocese of Brooklyn.

12.     All such Diocese-related entities, corporations, or organizations are collectively referred to herein as the "Diocese."

13.     At all relevant times defendant Camp Alvernia ("Camp Alvernia") was a not-for-profit religious corporation organized under New York law that was wholly owned, operated, and controlled by the Diocese.

14.     Camp Alvernia is currently a not-for-profit religious corporation organized under New York law with its principal office in Centerport, New York.

3

15.     At all relevant times Camp Alvernia conducted business as "Camp Alvernia," "Alvernia," "Alvernia Summer Camp," and "Mount Alvernia Inc."

16.     Camp Alvernia is a camp located in Centerport, New York.

17.     The Franciscan Brother who abused Joseph was a religious brother and employee of Camp Alvernia who served Catholic families on behalf of Camp Alvernia, including plaintiff Joseph Amodeo and his family.

18.     During the time the Franciscan Brother who abused Joseph served at Camp Alvernia, he used his positions as a religious brother and employee of Camp Alvernia to groom and to sexually abuse plaintiff Joseph Amodeo.

19.     To the extent that Camp Alvernia was a different entity, corporation, or organization during the period of time during which the Franciscan Brother who abused Joseph used his positions as a religious brother and employee to sexually abuse Joseph, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Camp Alvernia.

20.     To the extent Camp Alvernia is a successor to a different entity, corporation, or organization which existed during the period of time during which the Franciscan Brother who abused Joseph used his positions as a religious brother and employee to sexually abuse Joseph, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Camp Alvernia.

21.     All such Camp Alvernia-related entities, corporations, or organizations are collectively referred to herein as "Camp Alvernia."

4

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 7 of 21 PageID #: 12

22.    At all relevant times defendant Franciscan Brothers of Brooklyn ("Franciscan Brothers") was a not-for-profit religious corporation organized under New York law with its principal office in Brooklyn, New York.

23.    At all relevant times the Franciscan Brothers conducted business as "Franciscan Brothers of Brooklyn," "Congregation of the Religious Brothers of the Third Order Regular of St. Francis," "Religious Brothers of the Third Order Regular of St. Francis," and the "Franciscan Brothers."

24.    The Franciscan Brothers is a Catholic religious order whose members, employees, and/or agents served various Catholic institutions and families, including the Diocese, Camp Alvernia, plaintiff Joseph Amodeo, and his family.

25.    The members, employees, and/or agents of the Franciscan Brothers were generally referred to as brothers and the Franciscan Brothers would receive compensation for the services that its agents provided to others, including the services they provided to the Diocese and Camp Alvernia.

26.    The Franciscan Brother who abused Joseph was an agent of the Franciscan Brothers who served Catholic families on behalf of the Franciscan Brothers, including plaintiff Joseph Amodeo and his family.

27.    During the time the Franciscan Brother who abused Joseph served the Franciscan Brothers, he used his position as an agent of the Franciscan Brothers to groom and to sexually abuse plaintiff Joseph Amodeo.

28.    To the extent that the Franciscan Brothers was a different entity, corporation, or organization during the period of time during which the Franciscan Brother who abused Joseph used his positions at Camp Alvernia to sexually abuse Joseph, such entity, corporation, or

5

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 8 of 21 PageID #:
13

organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named
in this lawsuit as Franciscan Brothers of Brooklyn.

29.    To the extent the Franciscan Brothers is a successor to a different entity,
corporation, or organization that existed during the period of time when the Franciscan Brother
who abused Joseph used his positions at Camp Alvernia to sexually abuse Joseph, such predecessor
entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this
lawsuit and is named in this lawsuit as Franciscan Brothers of Brooklyn.

30.    All such Franciscan Brothers-related entities, corporations, or organizations are
collectively referred to herein as the "Franciscan Brothers."

## IV.    VENUE

31.    Venue is proper because the Diocese is a domestic corporation authorized to
transact business in New York with its principal office located in Kings County.

32.    Venue is proper because Camp Alvernia is a domestic corporation authorized to
transact business in New York with its principal office located in Centerport, New York.

33.    Venue is proper because Kings is the county in which a substantial part of the events
or omissions giving rise to plaintiff's claims occurred.

34.    The amount of damages sought exceeds the jurisdictional limits of all lower courts
which would otherwise have jurisdiction.

## V.    STATEMENT OF FACTS

35.    At all relevant times the Diocese employed and/or relied on priests, clergy, religious
brothers, religious sisters, teachers, school administrators, employees, volunteers, and others who
served various Catholic institutions and families, including plaintiff Joseph Amodeo and his
family.

6

36.     At all relevant times the Diocese was the owner of Camp Alvernia and held itself out to the public as the owner of Camp Alvernia.

37.     At all relevant times the Diocese, through its agents, servants, and employees, managed, maintained, operated, and controlled Camp Alvernia, including the agents of the Franciscan Brothers who served there.

38.     At all relevant times the Diocese, through its agents, servants, and employees, managed, maintained, operated, and controlled Camp Alvernia, and held out to the public its agents, servants, and employees as those who managed, maintained, operated, and controlled Camp Alvernia.

39.     At all relevant times the Diocese was responsible for the hiring and staffing, and did the hiring and staffing, at Camp Alvernia.

40.     At all relevant times the Diocese was responsible for and did the recruitment and staffing of volunteers at Camp Alvernia.

41.     At all relevant times the Diocese materially benefited from the operation of Camp Alvernia, including the services of the Franciscan Brother who abused Joseph and the services of those who managed and supervised the Franciscan Brother who abused Joseph.

42.     At all relevant times Camp Alvernia owned a camp.

43.     At all relevant times Camp Alvernia held itself out to the public as the owner of Camp Alvernia.

44.     At all relevant times Camp Alvernia employed and/or utilized individuals who served Catholic families, including plaintiff Joseph Amodeo and his family.

45.     At all relevant times Camp Alvernia, through its agents, servants, and employees, managed, maintained, operated, and controlled Camp Alvernia, and held out to the public its

INDEX NO. 513592/2020
RECEIVED NYSCEF: 07/28/2020

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 10 of 21 PageID
#: 15

agents, servants and employees as those who managed, maintained, operated, and controlled Camp Alvernia.

46.     At all relevant times Camp Alvernia was responsible for and did the staffing and hiring at Camp Alvernia.

47.     At all relevant times Camp Alvernia was responsible for and did the recruitment and staffing of the employees, agents, and volunteers at Camp Alvernia.

48.     At all relevant times Camp Alvernia materially benefited from the operation of Camp Alvernia, including the services of the Franciscan Brother who abused Joseph and the services of those who managed and supervised the Franciscan Brother who abused Joseph.

49.     At all relevant times the Franciscan Brother who abused Joseph was an employee, agent, and/or religious brother and employee of the Diocese.

50.     At all relevant times the Franciscan Brother who abused Joseph was on the staff of, acted as an agent of, and/or served as an employee of the Diocese.

51.     At all relevant times the Franciscan Brother who abused Joseph was acting in the course and scope of his employment and/or agency with the Diocese.

52.     At all relevant times the Franciscan Brother who abused Joseph was an employee and/or agent of the Diocese that it assigned to Camp Alvernia and that it allowed to serve at Camp Alvernia.

53.     At all relevant times the Franciscan Brother who abused Joseph was an employee, agent, and/or religious brother and employee of Camp Alvernia.

54.     At all relevant times the Franciscan Brother who abused Joseph was on the staff of, was an agent of, and/or served as an employee of Camp Alvernia.

8

NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 07/28/2020

Case 1:23-cv-05037-NCM-JRC   Document 1-1   Filed 07/03/23   Page 11 of 21 PageID #: 16

55.     At all relevant times the Franciscan Brother who abused Joseph was acting in the course and scope of his employment and/or agency with Camp Alvernia.

56.     At all relevant times the Franciscan Brothers provided the Diocese and Camp Alvernia with some of its agents to provide services at Camp Alvernia.

57.     At all relevant times the Franciscan Brothers held itself out to the public as the owner and/or operator of Camp Alvernia.

58.     At all relevant times agents of the Franciscan Brothers provided services to Catholic families, including plaintiff Joseph Amodeo and his family.

59.     At all relevant times the Franciscan Brothers, through its agents, managed, maintained, operated, and controlled Camp Alvernia, and held out to the public its agents as those who managed, maintained, operated, and controlled Camp Alvernia.

60.     At all relevant times the Franciscan Brothers was responsible for and did the staffing and hiring at Camp Alvernia.

61.     At all relevant times the Franciscan Brothers was responsible for and did the recruitment and staffing of volunteers at Camp Alvernia.

62.     At all relevant times the Franciscan Brothers materially benefited from the operation of Camp Alvernia, including the services of the Franciscan Brother who abused Joseph and the services of those who managed and supervised the Franciscan Brother who abused Joseph.

63.     At all relevant times the Franciscan Brother who abused Joseph was an agent of the Franciscan Brothers at Camp Alvernia.

64.     At all relevant times the Franciscan Brother who abused Joseph acted as an agent of the Franciscan Brothers.

9

Case 1:23-cv-05037-NCM-JRC     Document 1-1     Filed 07/03/23     Page 12 of 21 PageID #: 17

65.     At all relevant times the Franciscan Brother who abused Joseph was acting in the course and scope of his agency with the Franciscan Brothers.

66.     At all relevant times the Franciscan Brother who abused Joseph was an agent of the Franciscan Brothers that it assigned to Camp Alvernia and/or that it allowed to serve at Camp Alvernia.

67.     The agents of the Franciscan Brothers who provided services to the Diocese and Camp Alvernia, including the Franciscan Brother who abused Joseph and those who managed and supervised him, were subject to the authority and control of the Franciscan Brothers, the Diocese, and Camp Alvernia.

68.     The Diocese and Camp Alvernia derived benefits from the agents of the Franciscan Brothers who provided services to the Diocese and Camp Alvernia, including the Franciscan Brother who abused Joseph and those who managed and supervised him.

69.     At all relevant times the Franciscan Brother who abused Joseph had an office on the premises of Camp Alvernia.

70.     When plaintiff Joseph Amodeo was a minor, he and his parents were members of the Diocese, including when Joseph attended camp at Camp Alvernia.

71.     The Diocese, Camp Alvernia, and the Franciscan Brothers, through their agents, servants, and employees, held the Franciscan Brother who abused Joseph out to the public, to Joseph, and to his parents, as their agent and/or employee.

72.     The Diocese, Camp Alvernia, the Franciscan Brothers, through their agents, servants, and employees, held the Franciscan Brother who abused Joseph out to the public, to Joseph, and to his parents, as having been vetted, screened, and approved by those defendants.

10

73.     Joseph and his parents reasonably relied upon the acts and representations of the Diocese, Camp Alvernia, and the Franciscan Brothers, through their agents, servants, and employees, and reasonably believed that the Franciscan Brother who abused Joseph was an agent and/or employee of those defendants who was vetted, screened, and approved by those defendants.

74.     Joseph and his parents trusted the Franciscan Brother who abused Joseph because the Diocese, Camp Alvernia, and the Franciscan Brothers held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Joseph.

75.     Joseph and his parents believed that the Diocese, Camp Alvernia, and the Franciscan Brothers would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of Joseph.

76.     When Joseph was a minor, the Franciscan Brother who abused Joseph used his positions with the defendants to sexually abuse him.

77.     Joseph was sexually abused by the Franciscan Brother who abused Joseph when he was approximately 10 years old.

78.     The sexual abuse occurred numerous times and included, but was not limited to, the Franciscan Brother who abused Joseph removing Joseph's clothing, the Franciscan Brother who abused Joseph fondling Joseph, and the Franciscan Brother who abused Joseph performing oral sex on Joseph.

79.     Based on the representations of the Diocese, Camp Alvernia, and the Franciscan Brothers that the Franciscan Brother who abused Joseph was safe and trustworthy, Joseph and his parents allowed Joseph to be under the supervision of, and in the care, custody, and control of, the

11

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 14 of 21 PageID
#: 19

Diocese, Camp Alvernia, and the Franciscan Brothers, including during the times when Joseph

was sexually abused by the Franciscan Brother who abused Joseph.

80.     Based on the representations of the Diocese, Camp Alvernia, and the Franciscan

Brothers that the Franciscan Brother who abused Joseph was safe and trustworthy, Joseph and his

parents allowed Joseph to be under the supervision of, and in the care, custody, and control of, the

Franciscan Brother who abused Joseph, including during the times when Joseph was sexually

abused by the Franciscan Brother who abused Joseph.

81.     Neither Joseph nor his parents would have allowed him to be under the supervision

of, or in the care, custody, or control of, the Diocese, Camp Alvernia, the Franciscan Brothers, or

the Franciscan Brother who abused Joseph if the Diocese, Camp Alvernia, or the Franciscan

Brothers had disclosed to Joseph or his parents that the Franciscan Brother who abused Joseph

was not safe and was not trustworthy, and that he in fact posed a danger to Joseph in that the

Franciscan Brother who abused Joseph was likely to sexually abuse Joseph.

82.     No parent of ordinary prudence in comparable circumstances would have allowed

Joseph to be under the supervision of, or in the care, custody, or control of, the Diocese, Camp

Alvernia, the Franciscan Brothers, or the Franciscan Brother who abused Joseph if the Diocese,

Camp Alvernia, or the Franciscan Brothers had disclosed to Joseph or his parents that the

Franciscan Brother who abused Joseph was not safe and was not trustworthy, and that he in fact

posed a danger to Joseph in that the Franciscan Brother who abused Joseph was likely to sexually

abuse him.

83.     In  approximately 1962, the Franciscan Brother who abused Joseph exploited the

trust and authority vested in him by the defendants by grooming Joseph to gain his trust and to

12

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 15 of 21 PageID #: 20

obtain control over him as part of the Franciscan Brother's plan to sexually molest and abuse Joseph and other children.

84.    The Franciscan Brother who abused Joseph used his position of trust and authority as an employee and/or agent of the Diocese, of Camp Alvernia, and of the Franciscan Brothers to groom Joseph and to sexually abuse him multiple times, including when Joseph was under the supervision of, and in the care, custody, or control of, the Diocese, Camp Alvernia, the Franciscan Brothers, and the Franciscan Brother who abused Joseph.

85.    The sexual abuse of Joseph by the Franciscan Brother who abused Joseph occurred at Camp Alvernia, including in the cabin of Camp Alvernia in which Joseph was staying.

86.    The sexual abuse of Joseph by the Franciscan Brother who abused Joseph occurred during activities that were sponsored by, or were a direct result of activities sponsored by, the Diocese, Camp Alvernia, and the Franciscan Brothers, including while campers were sleeping and while campers were showering. During such activities the defendants had care, custody, or control of Joseph.

87.    Prior to the times mentioned herein, the Franciscan Brother who abused Joseph was a known sexual abuser of children.

88.    At all relevant times the defendants, through their agents, servants, and employees, knew or should have known that the Franciscan Brother who abused Joseph was a known sexual abuser of children.

89.    At all relevant times it was reasonably foreseeable to the defendants, through their agents, servants, and employees, that the Franciscan Brother's sexual abuse of children would likely result in injury to others, including the sexual abuse of Joseph and other children by the Franciscan Brother who abused Joseph.

13

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 16 of 21 PageID #: 21

90.    The defendants, their agents, servants, and employees knew or should have known that the Franciscan Brother who abused Joseph was sexually abusing Joseph and other children at Camp Alvernia and elsewhere.

91.    The defendants, through their agents, servants, and employees, knew or should have known that the sexual abuse by the Franciscan Brother who abused Joseph of Joseph was ongoing.

92.    The defendants, through their agents, servants, and employees, knew or should have known before and during the sexual abuse of Joseph by the Franciscan Brother who abused Joseph that priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and/or other persons serving the Diocese, Camp Alvernia, and/or the Franciscan Brothers had used their positions with those defendants to groom and to sexually abuse children.

93.    The defendants, through their agents, servants, and employees, knew or should have known before and during the sexual abuse of Joseph by the Franciscan Brother who abused Joseph that such priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and/or other persons could not be "cured" through treatment or counseling.

94.    The defendants, through their agents, servants, and employees, concealed the sexual abuse of children by the Franciscan Brother who abused Joseph in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that the Franciscan Brother who abused Joseph would continue to molest children.

95.    The defendants, through their agents, servants, and employees, consciously and recklessly disregarded their knowledge that the Franciscan Brother who abused Joseph would use his positions with the defendants to sexually abuse children, including Joseph.

14

Case 1:23-cv-05037-NCM-JRC          Document 1-1          Filed 07/03/23          Page 17 of 21 PageID #: 22

96.     The defendants, through their agents, servants, and employees, disregarded their knowledge that the Franciscan Brother who abused Joseph would use his positions with them to sexually abuse children, including Joseph.

97.     The defendants, through their agents, servants, and employees, acted in concert with each other or with the Franciscan Brother who abused Joseph to conceal the danger that the Franciscan Brother who abused Joseph posed to children, including Joseph, so that the Franciscan Brother who abused Joseph could continue serving them despite their knowledge of that danger.

98.     The defendants, through their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Joseph, and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

99.     The defendants, through their agents, servants, and employees, concealed the sexual abuse of children by priests and others in order to conceal their own bad acts in failing to protect children from being abused, to protect their reputation, and to prevent victims of such sexual abuse from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that those priests and other persons would continue to molest children.

100.    By reason of the wrongful acts of each of the defendants as detailed herein, Joseph sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these

15

Case 1:23-cv-05037-NCM-JRC     Document 1-1     Filed 07/03/23     Page 18 of 21 PageID #: 23

injuries are of a permanent and lasting nature, and Joseph has and/or will become obligated to expend sums of money for treatment.

## VI.     CAUSES OF ACTION

### A.     FIRST CAUSE OF ACTION – NEGLIGENCE

101.     Plaintiff Joseph Amodeo repeats and re-alleges all of his allegations above and below.

102.     Each defendant had a duty to take reasonable steps to protect plaintiff Joseph Amodeo, a child, from foreseeable harm when he was under their supervision and in their care, custody, and control, including when the Franciscan Brother who abused Joseph sexually abused him.

103.     Each defendant also had a duty to take reasonable steps to prevent the Franciscan Brother who abused Joseph from using the tasks, premises, and instrumentalities of his positions with them to target, groom, and sexually abuse children, including Joseph.

104.     These circumstances created a special relationship between each defendant and Joseph that imposed on each of them a duty to exercise the degree of care of a parent of ordinary prudence in comparable circumstances.

105.     Each defendant breached the foregoing duties by failing to exercise reasonable care to prevent the Franciscan Brother who abused Joseph from using his positions with the defendants to sexually abuse Joseph when he was in their care, custody, or control.

106.     In breaching their duties, including hiring, retaining, and failing to supervise the Franciscan Brother who abused Joseph, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Joseph, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure

16

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 19 of 21 PageID #: 24

environment for Joseph and other children who were under their supervision and in their care, custody, and control, each defendant created a risk that Joseph would be sexually abused by the Franciscan Brother who abused Joseph. Each defendant through its actions and inactions created an environment that placed Joseph in danger of unreasonable risks of harm under the circumstances.

107. In breaching their duties, including hiring, retaining, and failing to supervise the Franciscan Brother who abused Joseph, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Joseph, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for Joseph and other children who were under their supervision and in their care, custody, and control, each defendant acted willfully and with conscious disregard for the need to protect Joseph. Each defendant through their actions and inactions created an environment that placed Joseph in danger of unreasonable risks of harm under the circumstances.

108. It was reasonably foreseeable that each defendant's breach of these duties of care would result in the sexual abuse of Joseph.

109. As a direct and proximate result of the acts and omissions of each defendant, the Franciscan Brother who abused Joseph groomed and sexually abused Joseph, which has caused Joseph to suffer general and special damages as more fully described herein.

**B. SECOND CAUSE OF ACTION – OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

110. Plaintiff Joseph Amodeo repeats and re-alleges all of his allegations above and below.

17

111.    Each defendant engaged in reckless, extreme, and outrageous conduct by providing the Franciscan Brother who abused Joseph with access to children, including plaintiff Joseph Amodeo, despite knowing that he would likely use his positions to groom and to sexually abuse them, including Joseph. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

112.    As a result of this reckless, extreme, and outrageous conduct, the Franciscan Brother who abused Joseph gained access to Joseph and sexually abused him.

113.    Each defendant knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and Joseph did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

## VII.    CPLR 1603 – NO APPORTIONMENT OF LIABILITY

114.    Pursuant to CPLR 1603, the foregoing causes of action are exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(2), CPLR 1602(5), 1602(7) and 1602(11), thus precluding defendants from limiting their liability by apportioning some portion of liability to any joint tortfeasor.

## VIII.    PRAYER FOR RELIEF

115.    Plaintiff Joseph Amodeo demands judgment against the defendants named in his causes of action, together with compensatory and punitive damages to be determined at trial, and the interest, cost and disbursements pursuant to his causes of action, and such other and further relief as the Court deems just and proper.

18

FILED: KINGS COUNTY CLERK 07/28/2020 04:17 PM
NYSCEF DOC. NO. 1

INDEX NO. 513592/2020

RECEIVED NYSCEF: 07/28/2020

Case 1:23-cv-05037-NCM-JRC    Document 1-1    Filed 07/03/23    Page 21 of 21 PageID
#: 26

116.    Plaintiff specifically reserves the right to pursue additional causes of action, other

than those outlined above, that are supported by the facts pleaded or that may be supported by

other facts learned in discovery.

Dated: June 1, 2020

MARSH LAW FIRM PLLC

By _____
James R. Marsh
Jennifer Freeman
Robert Lewis
jamesmarsh@marsh.law
jenniferfreeman@marsh.law
robertlewis@marsh.law
31 Hudson Yards, 11th Floor
New York, NY 10001-2170
Phone: 212-372-3030

PFAU COCHRAN VERTETIS AMALA PLLC

By _____
Vincent T. Nappo
vnappo@pcvalaw.com
Anelga Doumanian
adoumanian@pcvalaw.com
31 Hudson Yards, 11th Floor
New York, NY 10001-2170

Attorneys for Plaintiff

19